**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| LUIS A. CURET,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER BLOOM and OFFICER TIM FILTER,<br><br>Defendants. | Case No. 20-CV-412-JPS<br><br>**ORDER** |

On March 17, 2020, Plaintiff Luis A. Curet ("Plaintiff"), a pro se prisoner who is currently incarcerated at Columbia Correctional Institution, brought this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. As outlined in the Court's screening order, this case proceeds on the following claims: (1) unreasonable search, in violation of the Fourth Amendment, by Defendants Christopher Bloom ("Bloom") and Tim Filter ("Filter") on December 14, 2017; and (2) the use of excessive force against Plaintiff, in violation of the Fourth Amendment, by Defendant Bloom on December 14, 2017. ECF No. 12 at 6. On November 28, 2022, the Court denied Defendants' motion for summary judgment based on the failure to follow summary judgment protocols. ECF No. 137.

On January 6, 2023, the Court granted Defendants' motion to adjourn the trial date and administratively closed the case to allow Plaintiff time to complete the state appeal of his criminal case. ECF No. 147. On June 24, 2025, Plaintiff filed a letter regarding proceeding to trial and/or settlement. ECF No. 153. On July 8, 2025, Defendants filed a status report, ECF No. 154, and a motion for reconsideration of the Court's prior order

denying summary judgment, ECF No. 155. The Court denied Defendants' motion for reconsideration without prejudice because Defendants failed to provide a joint statement of facts as required by the Court's scheduling order; the Court granted Defendants leave to refile their motion because it appeared that their argument relied on undisputed facts. ECF No. 182. Thereafter, Defendants renewed their motion for reconsideration along with a joint statement of undisputed facts and a separately filed list of disputed facts. ECF Nos. 186, 187, 190. The Court first turns to the threshold issue of whether it will reconsider Defendants' arguments for summary judgment.

The Court will grant Defendants' motion for reconsideration in part and will deny it in part. Because there has not yet been a final judgment in this case, Federal Rule of Civil Procedure ("Rule") 54(b) governs Plaintiff's motion for reconsideration. *See Bhatia v. Vaswani*, No. 18-CV-2387, 2020 WL 3578004, at *2 (N.D. Ill. July 1, 2020). Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." *See Ghashiyah v. Frank*, No. 05-CV-766, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt*

*Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id.* (citation and internal quotation marks omitted). Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Id.* The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

Here, the Court will reconsider Defendants' summary judgment arguments in part because they present new information that did not exist at the time of the original motion for summary judgment. Based on the parties' request, the Court previously adjourned the trial and administratively closed the case because Plaintiff's related criminal state case was still pending on appeal. ECF No. 147. On reconsideration, Defendants provide that Plaintiff's criminal case and related appeals have all concluded, with Plaintiff's conviction affirmed. ECF No. 156 at 3–4. Defendants argue that based on the undisputed facts, they are entitled to summary judgment because Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 11. The Court finds Defendants' argument to reconsider the issues to be persuasive. To be sure, the Court does not wish to waste judicial resources at a trial with claims that should be barred as a matter of law. The Court will therefore consider Defendants' arguments in favor of summary judgment.

## 1. LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

In compliance with the Court's scheduling order, Defendants submitted joint proposed findings of fact, ECF No. 186, along with a separate set of disputed facts, ECF No. 187, along with their motion. As such, the Court takes the following facts from the parties' submitted facts. While the parties clearly dispute various factual issues about the merits of the issues, the Court finds that there are no genuinely disputed material facts as related to Defendants' argument that Plaintiff's claims are *Heck*-barred.

On December 14, 2017, Bloom and Filter were on duty as police officers for the City of Waukesha Police Department (the "WPD"). At approximately 2:33 a.m., dispatch for the WPD ("Dispatch") received an

emergency call from E.J., who reported a domestic abuse incident allegedly involving Plaintiff at E.J.'s residence. In response to E.J.'s emergency call on December 14, 2017, Dispatch sent numerous WPD officers, including Bloom and Filter, to E.J.'s residence to investigate the report of domestic abuse. Shortly after Bloom and Filter arrived at E.J.'s residence, they began searching for Plaintiff in the surrounding area.

As the search for Plaintiff was ongoing, E.J. informed one of the responding officers of her belief that Plaintiff may be at his aunt's residence located at 327 Arlington Street, Waukesha, WI. On the day in question, Plaintiff's aunt, Myrtle Coon-Brooks ("Coon-Brooks"), resided at 327 Arlington Street, Apt. #3, in Waukesha, WI. Filter, Bloom, and Spakowicz entered Apartment No. 3 in the apartment complex located at 327 Arlington Street and located Plaintiff inside the unit. In effectuating his arrest, and prior to the officers securing Plaintiff in handcuffs, Bloom shot Plaintiff with his department-issued electronic control device ("Taser"). The two probes deployed from Bloom's Taser dispensed an electrical discharge lasting approximately five seconds. After being tased, Plaintiff fell to the ground and he was placed in handcuffs.

On December 15, 2017, the State of Wisconsin (the "State") filed a criminal complaint naming Plaintiff as the defendant in *State of Wisconsin v. Luis A. Curet*, Waukesha County Case No. 2017-CF-001798 ("*State v. Curet*"). The criminal complaint asserted various misdemeanor and felony charges against Plaintiff based on his alleged actions leading to his arrest on or about December 14, 2017. On January 26, 2018, the State filed an Information asserting the following criminal charges against Plaintiff in *State v. Curet*: (1) Second Degree Sexual Assault, Domestic Abuse ("Count 1"); (2) Second Degree Sexual Assault, Domestic Abuse ("Count 2");

(3) Strangulation And Suffocation, Domestic Abuse ("Count 3"); (4) Substantial Battery, Domestic Abuse ("Count 4"); (5) Felony Intimidation Of A Victim, Domestic Abuse ("Count 5"); (6) Threat To Law Enforcement Officer ("Count 6"); (7) Resisting An Officer ("Count 7"); (8) Threat To Law Enforcement Officer ("Count 8"); and (9) Intentionally Contact Victim, Witness Or Co-Actor After Court Order For A Misdemeanor Conviction, Domestic Abuse ("Count 9").

Plaintiff's criminal case proceeded to a jury trial on seven of the nine counts from the Information; the trial was held in Branch 3 of the Circuit Court for Waukesha County ("Circuit Court") between October 19, 2018, and October 25, 2018. Officers Filter, Bloom, and Spakowicz were among the Waukesha police officers who testified at the trial. At trial, Filter, Bloom, and Spakowicz each testified that they discovered Plaintiff in a closet at his aunt's residence on December 14, 2017. Filter, Bloom, and Spakowicz additionally testified that when the officers discovered Plaintiff in his aunt's closet, he was holding a lit cigarette. Filter, Bloom, and Spakowicz testified at the criminal trial that Filter gave Plaintiff multiple commands to put his hands up and get on the floor when they discovered Plaintiff in his aunt's closet. Filter and Bloom further testified that Plaintiff did not comply with these commands and instead stepped towards the officers.

With respect to Count 2 on the Information, the Circuit Court instructed the jury in relevant part:

**State's Burden of Proof**

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.

**Elements of the Crime That the State Must Prove**

1. The defendant had sexual contact with [E.J.].

2. [E.J.] did not consent to the sexual contact.

3. The defendant had sexual contact with [E.J.] by use or threat of force or violence.

> The use or threat of force or violence may occur before or as part of the sexual contact.
>
> The phrase "by use of force" includes forcible sexual contact or force used as the means of making sexual contact.

**Meaning of "Sexual Contact"**

Sexual contact is an intentional touching of the vagina of [E.J.] by the defendant. The touching may be of the vagina directly or it may be through the clothing. The touching may be done by any body part or by any object, but it must be an intentional touching, Sexual contact also requires that the defendant acted with intent to become sexually aroused or gratified.

**Meaning of "Did Not Consent"**

"Did not consent" means that [E.J.] did not freely agree to have sexual contact with the defendant, In deciding whether [E.J.] did not consent, you should consider what [E.J.] said and did, along with all the other facts and circumstances. This element does not require that [E.J.] offered physical resistance.

As to Count 5 on the Information, the Circuit Court instructed the jury that before it could find Plaintiff guilty of this offense, it must find that the State proved beyond a reasonable doubt that the following elements were present:

**Elements of the Crime That the State Must Prove**

1. [E.J.] was a victim of a crime.

> "Victim" means a person against whom a crime has been committed or attempted in this state. ln this case,

it is alleged that [E.J.] was a victim of sexual assault or substantial battery.

2. The defendant attempted to dissuade [E.J.] from reporting the crime to any law enforcement agency.

3. The defendant acted knowingly and maliciously.

This requires that the defendant knew [E.J.] was a victim of a crime and that the defendant acted with an intent to interfere with the orderly administration of justice.

The Jury Instructions provided that before the jury could find Plaintiff guilty of the offense pled in Count 6 of the Information, it must find that the State proved beyond a reasonable doubt that the following elements were present:

**Elements of the Crime That the State Must Prove**

1. The defendant threatened to cause bodily harm to Officer Filter or Officer Spakowicz.

A “threat” is an expression of intention to do harm and may be communicated orally, in writing, or by conduct. This element requires a true threat. "True threat" means that a reasonable person making the threat would foresee that a reasonable person would interpret the threat as a serious expression of intent to do harm. It is not necessary that the person making the threat have the ability to carry out the threat. You must consider all the circumstances in determining whether a threat is a true threat.

“Bodily harm” means physical pain or injury, illness, or any impairment of physical condition.

2. Officer Filter or Officer Spakowicz was a law enforcement officer.

3. The defendant knew that Officer Filter or Officer Spakowicz was a law enforcement officer.

4. The threat was in response to an action taken in the law enforcement officer's official capacity.

Law enforcement officers act in an official capacity when they perform duties that they are employed to perform. The duties of a law enforcement officer include: placing a suspect under arrest.

5. The defendant threatened to cause bodily harm to Officer Filter or Officer Spakowicz without the consent of Officer Filter or Officer Spakowicz.

6. The defendant acted intentionally. This requires that the defendant acted with the mental purpose to threaten bodily harm to another human being.

The Jury Instructions also provided that before the jury could find Plaintiff guilty of the offense pled in Count 7 on the Information, it must find that the State proved beyond a reasonable doubt the presence of the following elements:

**Elements of the Crime That the State Must Prove**

1. The defendant resisted an officer.

A Waukesha Police Officer is an officer.

To resist an officer means to oppose the officer by force or threat of force.

The resistance must be directed to the officer personally.

2. The officer was doing an act in an official capacity.

Waukesha Police Officers act in an official capacity when they perform duties that they are employed to perform. The duties of a Waukesha Police Officer include: placing a suspect under arrest.

3. The officer was acting with lawful authority.

Waukesha Police Officers act with lawful authority if their acts are conducted in accordance with the law. In this case, it is alleged that the officer was attempting to place [Plaintiff] under arrest.

4. The defendant knew that the Waukesha Police Officers were officers acting in an official capacity and with lawful

> authority and that the defendant knew his conduct would resist the office.

With respect to Count 9 on the Information, the Circuit Court instructed the jury that before it could find Plaintiff guilty of this offense, it must find that the State proved beyond a reasonable doubt that the following elements were present:

**Elements of the Crime That the State Must Prove**

> 1. A no contact order was issued under § 973.049(2) of the Wisconsin Statutes as a result of a conviction for a misdemeanor.
>
> > A misdemeanor is a crime punishable by imprisonment in the county jail.
>
> 2. The defendant committed an act that violated the no contact order.
>
> 3. The defendant intentionally violated the no contact order.
>
> > This requires that the defendant knew that the no contact order had been issued and knew that his acts violated the order.

On October 25, 2018, the jury in *State v. Curet* entered its verdict and found Plaintiff guilty of the following offenses: (1) Second-Degree Sexual Assault, as set forth in Count 2 of the Information. The verdict also provides in relation to Count 2, "To wit: finger to vagina contact by use of force."; (2) Intimidating a Victim, as set forth in Count 5 of the Information. As to Count 5, the jury also found that Plaintiff's act was accompanied by force or violence upon E.J.; (3) Threat to a Law Enforcement Officer, as set forth in Count 6 of the Information. The verdict also provides in relation to Count 6, "To wit: Officer Filter."; (4) Resisting an Officer, as set forth in Count 7 of the Information; (5) Intentionally Contact Victim after a Court Order for a Misdemeanor Conviction, as set forth in Count 9 of the Information.

Plaintiff appealed the judgment of conviction entered in *State v. Curet* to the Wisconsin Court of Appeals, Appeal No. 2020AP469. On January 31, 2024, the Wisconsin Court of Appeals issued an opinion and order summarily affirming the judgments of conviction. On or about December 12, 2025, the Wisconsin Court of Appeals issued a decision in Appeal No. 2020AP469, in which it ordered that the appellate court "will neither entertain nor respond to any further filings by Plaintiff regarding this case." At present, the judgment of conviction entered against Plaintiff in *State v. Curet* have not been vacated, invalidated, or overturned.

On August 9, 2021, Plaintiff filed an amended complaint in this lawsuit, which is the operative pleading in this matter. ECF No. 10. In the amended complaint, Plaintiff alleges, "I was found guilty and convicted of a resisting charge when I was not resisting. Due to the current paragraph, Officer Bloom violated my [F]ourth Amendment [sic] by breaking into my Auntie [sic] apartment without a valid warrant and he also invaded my privacy." The amended complaint also asserts that "Defendant violated [Plaintiff's rights] by shooting [Plaintiff] with a taser for no reason."

Plaintiff gave sworn testimony at his deposition in this lawsuit on June 30, 2022. At his deposition, Plaintiff testified that he never visited E.J. at her residence in Waukesha, WI between November 27, 2017, and December 14, 2017. Plaintiff also testified that around 3 p.m. or 4 p.m. on December 13, 2017, he left his aunt's residence in Waukesha, WI and traveled to Milwaukee, WI, where he remained until he returned to his aunt's Waukesha residence around 2 a.m. on December 14, 2017. Plaintiff further stated under oath that he did not physically see, meet with, or make physical contact with E.J. on December 13 or on December 14, 2017.

Regarding his encounter with Waukesha police officers at his aunt's residence, Plaintiff testified that he was not inside a closet at his aunt's residence to hide from officers or any other reason when Waukesha police officers, including Filter and Bloom, entered and were inside the residence on December 14, 2017. Plaintiff further testified that when Waukesha police officers initially entered his aunt's residence on December 14, 2017, they could visibly see Plaintiff next to his aunt's bed watching television. Plaintiff also testified that none of the officers who entered his aunt's residence gave him commands or verbal orders before Plaintiff was shot with a Taser. Plaintiff elaborated further on his encounter with Waukesha police officers, including Filter and Bloom, at his aunt's residence in Waukesha, WI on December 14, 2017, testifying in relevant part:

> As soon as they laid eyes on me, it was kind of, like, on sight they just shot me and put handcuffs on me. There was no way that I could have resisted because - - even if I wanted to resist I couldn't because the apartment is so small. I wasn't going nowhere. I was kind of, like, you know - - I would have surrendered. I did surrender. There was no reason for them to shoot me the way they did. Well, Officer Bloom. I'm not going to say "they" because he was the only one that shot me.

Plaintiff's deposition testimony additionally provides that he "didn't have a chance to comply or even resist arrest[,]" because of how quickly he was shot with a Taser after the officers saw him in his aunt's residence. Plaintiff also testified that he was not holding a cell phone, a lit cigarette, or any other objects in his hands at the time Officer Bloom shot him with a Taser on December 14, 2017.

In opposition to Defendants' original summary judgment motion, Plaintiff filed a declaration in which he stated under penalty of perjury,

"Furthermore, I did not penetrate EJ with my fingers." In this declaration, Plaintiff also stated in relevant part:

> I wasn't going to do nothing [sic] to any of the officers so it was no need to shoot me. I wasn't staring at the officers. I wasn't smoking a cigarette and I would not have used a cigarette as a weapon towards the officers. [ . . . ] They [the officers] are just saying all this happen to justify their wrong doing. But the truth is it wasn't necessary to gain control over me or for Officer Bloom to shoot me especially without giving me any commands.
>
> …
>
> Contrary to defendants[sic] affidavits, during these events I did not resist or threaten officers in any fashion to justify [Officer Bloom] shooting me with the taser or give them consent to search me without a warrant.

Between July 24, 2025, and August 26, 2025, Plaintiff filed in this case affidavits/declarations containing sworn statements purportedly by the following individuals: Cheryl Dixon ("Cheryl"), Loyalty Dixon ("Loyalty"), Dominic Coon ("Dominic"), Raynell Coon ("Raynell"), Coon-Brooks, E.J., and Sinceree Dixon ("Sinceree"), among other affidavits. Although the parties provided significant detail on the content of these affidavits, the Court will not go into specific detail as these facts are not material to the issue at hand. In short, the affidavits support Plaintiff's factual contentions that he did not see E.J. on the night in question, that he did not sexually assault or intimidate her, and that he did not resist the officers during his arrest. Plaintiff intends on calling Cheryl, Loyalty, Dominic, Raynell, Coon-Brooks, E.J., and Sinceree, among others, to testify as witnesses at the trial in this case; upon information and belief, Plaintiff expects that these individuals will testify consistent with their respective affidavit(s) that Plaintiff has filed in this matter between July 24, 2025, and August 26, 2025.

## 3. ANALYSIS

Defendants argue that both of Plaintiff's claims are *Heck*-barred and must therefore be dismissed. ECF No. 156 at 11. Plaintiff filed his complaint under 42 U.S.C. § 1983. A petition for a writ of habeas corpus under 28 U.S.C. § 2254 "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck*, 512 U.S. at 481. As explained in *Heck*, a plaintiff is precluded from bringing claims for damages if a judgment in favor of the plaintiff would "necessarily imply the invalidity of his [state criminal] conviction or sentence." *Id.* This bar applies unless the underlying conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.

The Seventh Circuit has instructed that in a complaint that includes "some *Heck*-barred contentions and other cognizable arguments . . . the proper response is not to toss the entire complaint. Instead, the judge must carve off any *Heck*-barred contentions and proceed with what remains." *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). The Court therefore examines each of Plaintiff's claims separately. As discussed below, the Court finds that the excessive force claim is *Heck*-barred but that the Fourth Amendment search claim is not barred and must therefore proceed to trial on the merits.

### 3.1 Excessive Force Claim

Defendants argue that Plaintiff's proffered factual support for the excessive force claim would necessarily invalidate the factual findings underlying his conviction for resisting an officer. ECF No. 156 at 17. In the

case of excessive force claims, where the plaintiff has been convicted of resisting arrest, the claims "can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014).

*Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), is instructive in this case. In *Evans*, the plaintiff, whom police badly beat while arresting him, brought an excessive force claim against the arresting officer. Prior to bringing suit, the plaintiff was convicted of resisting arrest in connection with the arrest during which he was beaten. The plaintiff advanced three arguments: "(1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody." *Id.* at 364. The court held that *Heck* barred him from proceeding with any claim for excessive force premised on the first argument, but that it did not bar any claim based on the second or third argument. *Id.* at 364–65.

Here, Plaintiff's excessive force claim alleges that Bloom's use of a taster against him was an unreasonable use of force. ECF No. 10 at 2. Specifically, Plaintiff alleges that Bloom shot him with a taser for "no real reason." *Id.* He also alleges that he was "found guilty and convicted of a resisting charge when [he] was not resisting." *Id.* As identified above, Plaintiff was found guilty at his criminal trial specifically for Resisting an Officer, as set forth in Count 7 of the Information. Count 7 of the Information alleged that Plaintiff, on or about December 14, 2017, did knowingly resist an officer, while such officer was doing an act in an official capacity and with lawful authority, attempting to place Plaintiff under arrest. Plaintiff's allegations in this case are in direct contrast to the finding

that he did not knowingly resist arrest. Thus, as in *Evans*, *Heck* bars Plaintiff from proceeding with a claim for excessive force based on the premise that he did not resist when being taken into custody. *See Evans*, 603 F.3d at 364–65.

Plaintiff has not put forth any other argument upon which the Court could find that Bloom's alleged use of force was excessive, without calling into question his conviction for resisting arrest. There may well be some theory upon which Plaintiff's allegations could survive *Heck*, but the plaintiff is the master of his own claim, and in advancing these factual allegations, he has abandoned other potential avenues and foreclosed relief. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (plaintiff foreclosed relief by failing to advance arguments that could have overcome a *Heck* bar.) As such, because a finding that Bloom used excessive force in effecting the arrest would necessarily call into question Plaintiff's criminal conviction for resisting arrest in this case, *Heck* bars this claim. The Court will accordingly grant Defendants' motion for reconsideration on this claim and will dismiss it without prejudice. *See Merkel v. Waukesha County*, No. 19-CV-712-JPS, 2019 WL 5558388, at *3–4 (E.D. Wis. Oct. 28, 2019) (finding that *Heck*-barred claim should be dismissed without prejudice because the plaintiff could theoretically still have his conviction overturned).

### 3.2 Fourth Amendment Search Claim

Defendants additionally argue that Plaintiff's Fourth Amendment search claim is barred by *Heck*.[1] Specifically, Defendants argue that the

---

[1]The Court notes that the record is not entirely clear on Plaintiff's relationship with his aunt's residence such that he had a reasonable expectation of privacy in this location. Defendants do not argue that Plaintiff did not have a reasonable expectation of privacy, so the Court therefore does not address the issue. Indeed, an individual need not permanently reside at a location in order to have a reasonable expectation of privacy. *See, e.g.*, *United States v. Walker*, 143 F.4th

"factual allegations as asserted and maintained throughout this lawsuit necessarily invalidate his underlying criminal convictions which are based on [his] physical contact and interactions with E.J. at her residence on December 13, 2027 and December 14, 2027." ECF No. 156 at 14. Plaintiff does not articulate a specific argument on this issue but generally argues that *Heck* does not bar his search claim. ECF No. 158 at 3.

The Seventh Circuit has explained that "[m]any claims that concern how police conduct searches or arrests are compatible with a conviction. For example, an arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction, because courts do not 'suppress the body' of the accused. Similarly, a court's decision not to suppress illegally seized evidence can lead to a conviction without blotting out a § 1983 challenge to the seizure." *Evans*, 603 F.3d at 363–64 (citations omitted); *see also Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit.").

A plaintiff's Fourth Amendment claim is barred by *Heck* when "specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction[,]" even if a plaintiff contends that his civil suit does not challenge his conviction. *McCann v. Neilsen*, 466 F.3d 619,

---

889, 895–96 (7th Cir. 2025) ("[I]t is well-established that a person has a legitimate expectation of privacy in a home in which they are an over-night guest."). Defendants also do not argue that an exception to the warrant requirement exists to require summary judgment. *See* ECF No. 156.

621 (7th Cir. 2006); *see also Okoro*, 324 F.3d at 490. To determine whether *Heck* bars a particular § 1983 claim—that is, whether the plaintiff's victory would *necessarily imply* the invalidity of the prior conviction—courts must carefully examine the relationship between the § 1983 claim and the conviction. *McCann*, F.3d at 621–22. Where the grounds for the civil-rights claim are premised on the very same facts that were the basis for the conviction, *Heck* will generally bar the claim because a plaintiff typically cannot win the civil claim without implying that he did not commit the crime. *Id.* at 621. In contrast, where the facts in the civil lawsuit are distinct from the facts that underlie the criminal conviction, *Heck* does not apply because a § 1983 victory would not necessarily imply the invalidity of the conviction. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014); *Evans,* 603 F.3d at 363–64. The Supreme Court has emphasized that it was "careful in *Heck* to stress the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). "To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

Here, and specifically related to the underlying facts of Plaintiff's search claim, Plaintiff is not challenging his conviction for sexually assaulting or intimidating E.J. Instead, he is merely challenging whether Defendants violated his reasonable expectation of privacy in the home when they entered without a warrant and allegedly without consent. Defendants argue that a "minimum component" of the convictions "requires a finding of fact that [Plaintiff] made some kind of physical contact with E.J. on the dates in question. ECF No. 156 at 15. However, for the purposes of the search claim in this case, these facts are immaterial. The

Fourth Amendment's protection of the home protects everyone—not just the innocent. *See Hawkins v. Mitchell*, 756 F.3d 983, 991 (7th Cir. 2014) ("'[P]hysical entry of the home is the chief evil' that this constitutional guarantee targets.") (quoting *United States v. United States District Court for the E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313)). Nothing in the record here suggests that any evidence was located during the search that was used to convict Plaintiff. Defendants do not explain in any detail why a finding in favor of Plaintiff's search claim would necessarily invalidate his criminal conviction. This case is therefore unlike *Okoro* where the Seventh Circuit held that the defendant's "effort to complain about a search was just a disguised way of asserting his innocence." *Mordi*, 870 F.3d at 708. The court found that if the jury believed the defendant's allegations that there were no drugs and that he was framed, the basis of his complaint would have been wiped out. *Id.*

In *Mordi*, the Seventh Circuit found that the plaintiff's assertions about his innocence were "background information" and that the relief sought would not undermine his guilty plea or his conviction. *Id.* The same can be said for Plaintiff's search claim in this case. True, Plaintiff has repeatedly asserted his innocence for the related criminal charges to the search in question. However, the Court considers Plaintiff's assertions as background information related to the search claim. Plaintiff is an incarcerated pro se party and understandably has not eloquently presented his arguments. Nonetheless, Plaintiff's Fourth Amendment search claim does not depend on whether he saw E.J. on the day in question. A successful search claim also would not require the Court to find that Plaintiff never assaulted E.J. Instead, the claim will depend on whether Defendants unlawfully entered the home without a warrant in violation of

the Fourth Amendment. Thus, finding in favor of Plaintiff on the search claim would not necessarily undermine any of his criminal convictions; the Court therefore finds that the search claim is not *Heck*-barred. *See Bates v. City of Chicago*, No. 23 C 5531, 2026 WL 183529, at *3 (N.D. Ill. Jan. 23, 2026). The Court will accordingly deny Defendants' motion for reconsideration with respect to the Fourth Amendment search claim and this claim will proceed to trial on the merits.

The Court notes that damages for an unreasonable search, if Plaintiff prevails, "likely would be nominal given [his] conviction on the underlying offense. . . ." *See Bates v. City of Chicago*, No. 23 C 5531, 2026 WL 183529, at *3 (N.D. Ill. Jan. 23, 2026). The parties should take care to consider this fact in light of the significant time and effort required to conduct a trial. The Court additionally notes that any evidence presented at trial must be relevant to the search claim at issue; under no circumstances will Plaintiff be allowed to turn this case into a circus challenging his criminal conviction by presenting irrelevant evidence regarding his innocence for claims that are not at issue in this case.

**4. CONCLUSION**

In sum, the Court grants Defendants' motion for reconsideration in part and denies it in part. The Court finds that Plaintiff's excessive force claim is *Heck*-barred and dismisses this claim without prejudice. Plaintiff's Fourth Amendment search claim is not *Heck*-barred and will therefore proceed to trial on the merits. The Court will enter a trial scheduling order in due course. Finally, the Court will deny without prejudice Plaintiff's motions for mediation, ECF Nos. 184, 191. The Court will entertain only *joint* requests to refer the case to a magistrate judge for the purposes of mediation.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for a mediation hearing, ECF Nos. 184, 191, be and the same are hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendants' second motion for reconsideration, ECF No. 190, be and the same is hereby **GRANTED in part and DENIED in part** as described in this Order; and

**IT IS FURTHER ORDERED** that Plaintiff's claim for excessive force in violation of the Fourth Amendment be and the same is hereby **DISMISSED without prejudice** because it is *Heck*-barred.

Dated at Milwaukee, Wisconsin, this 11th day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge